## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**WARREN DAVIS,**

*Plaintiff,*

v.

**PROPEL HOLDINGS, INC. d/b/a CREDITFRESH, CBW BANK,** *and* **CENTRINEX, LLC,**

*Defendants.*

Case Number:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Warren Davis** ("**Mr. Davis**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Propel Holdings Inc.,** doing business as CreditFresh ("**Propel**"), **CBW Bank,** formerly known as Citizens Bank of Weir, and **Centrinex, LLC** ("**Centrinex**") (jointly, "**the Defendants**") stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action by Mr. Davis against the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et. seq.* ("**RICO**"), the *Florida Consumer Collection Practices Act*, Florida Statutes § 559.55, *et seq.* ("**FCCPA**"), the Florida *Civil Remedies for Criminal Practices Act*, Florida Statutes § 772.101, *et seq.* ("**CRCPA**"), and for unjust enrichment.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965, and 28 U.S.C. § 1331, as RICO is a federal statute, and the relevant transactions were committed within Polk County, Florida.

3.      This Court has supplemental jurisdiction over Plaintiff's CRCPA and FCCPA claims under 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to Florida Statutes § 48.193 and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

6.      **Mr. Davis** is a natural person residing in the City of Lehigh, Lee County, Florida

7.      Mr. Davis is a *Consumer* as defined by the FCCPA, Florida Statutes § 559.55(8).

8.      **Propel** is a Canadian corporation with a primary business address of **69 Yonge Street, Suite 1500, Toronto, Ontario M5E 1K3.**

9.      Propel is not registered to conduct business within the State of Florida.

10.     **CBW Bank** is a Kansas-charted bank with a principal business address of **109 E. Main St., Weir, KS 66781.**

11.     CBW Bank's Kansas registered agent is **Citizens Bank of Weir, Kansas, 109 E. Main St., Weir, KS 66781.**

12.     **Centrinex** is a Nevada corporation with a primary business address of **10310 W. 84th Terr., Lexexa, KS 66214.**

13.     Centrinex's Kansas registered agent is **Bart Miller, 10310 W 84th Terr., Lenexa, KS 66214.** Upon information and belief, Bart Miller resides at 14712 Linden St, Leawood, KS 66224.

## FACTUAL ALLEGATIONS

14.     Sometime in 2020, Mr. Davis received an open-ended loan from CreditFresh, with an initial credit line of $1,475 (the "**CreditFresh Account**" or "**Account**").

15.     The effective interest rate on the Account was at least **120%** annually.

16.     In disclosures to its CreditFresh customers, Propel does not express its fees in terms of annual percentage rates.

17.     Rather, Propel states there is a monthly, or, in some cases, a bi-weekly, "Billing Cycle Charge" based upon the principal balance. **SEE PLAINTIFF'S EXHIBIT A.**

18.      For example, a balance between $3,500 to $3,749.99 would incur a monthly "Billing Cycle Charge" of $260. This equates to roughly a 120% annual interest rate.

19.     However, Propel discloses to its *investors* that the APR it charges for its extensions of credit falls between 88% to 190%. **SEE PLAINTIFF'S EXHIBIT B.**

20.     Extensions of credit issued by CreditFresh are, ostensibly, "made by" CBW Bank, a state-chartered bank based in Kansas.

21.     However, as explained in more detail below, CBW Bank had virtually no involvement in the underwriting or approval of Mr. Davis CreditFresh Account.

22.     Likewise, CBW Bank had no involvement in the billing, collection, or service of the account.

23.     CBW Bank did, however, knowingly profit in the scheme.

24.     The money used to fund the extension of credit Propel made to Mr. Davis belonged to, overwhelmingly, Propel (or its subsidiaries and investors), and not to CBW Bank.

25.     Propel was the entity that provided notices to Mr. Davis, as required by law, such as adverse reaction notices, cardholder agreements, and billing statements, and holds all documents pertaining to the CreditFresh Account.

26.     Propel performed or managed the majority of the activities necessary to generate and collect on the Plaintiff's loan.

27.     Propel's tasks included servicing the loan, payment and remittance operations.

28.     Mr. Davis used the proceeds from the CreditFresh Account to make personal and household purchases.

29.     The balance on the CreditFresh Account thus meets the definition of *Debt* under the FCCPA, Florida Statutes §559.55(6).

30.     CreditFresh received multiple payments from Mr. Davis, before the remaining balance of the Account was charged-off in December 2020.

31.     Florida Statutes § 687.02(1) renders usurious the extension of credit at interest rates **greater than 18%** per year.

32.     Florida Statutes § 687.071(3) renders the extension of credit with annual interest rates **greater than 45%** a third-degree felony.

33.     Florida Statutes § 687.071(7) renders any criminally usurious extension of credit as void and unenforceable.

34.     Indeed, even the recovery of the principal balance made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

35.     Because the CreditFresh Account is subject to an annual interest rate exceeding 100%, the balance is void *ab initio* and unenforceable under Florida law. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

36.     The balance on the CreditFresh Account is therefore an *unlawful debt*, as defined by Florida Statutes § 772.102(2)(a)(3).

37.    As the account charged interest of more than double the rate permitted by Florida law, the CreditFresh Account is also an *unlawful debt* per 18 U.S.C. § 1961(6).

## Propel Engages in Rent-a-Bank Scheme with CBW

38.    Formed in 2011, Propel Holdings Inc., is an Ontario-based "FinTech" business which uses proprietary methods to make extensions of credit and loans to consumers at interest rates which are illegal in most states, including Florida.

39.    Propel's two main products are "CreditFresh" and "MoneyKey."

40.    According to its Preliminary Prospectus dated September 29, 2021, prepared in advance of its initial public offering of shares of stock on a publicly-traded stock exchange, Propel has invested millions of dollars in developing underwriting analytics.

41.    Propel goes on to explain in its Preliminary Prospectus that it has a $120 million line of credit which it controls, along with two Delaware Statutory Trust entities called CreditFresh DST I and CreditFresh DST II.[1]

42.    Propel explains this credit line provides "Propel with the debt capital to continue to accelerate the growth and expansion of the credit offerings through Propel's platform" (e.g., CreditFresh and MoneyKey). *Preliminary Prospectus*, page 32.

---

[1] Both DSTs are beneficially owned by Propel.

43.    Propel also refers to the $120 million line of credit as the "CreditFresh Facility" and discloses to its investors the lines of credit are "to be used to fund the Company's CreditFresh brand products." *Preliminary Prospectus*, page 250.

44.    Propel warns its prospective investors one of its potential weaknesses could be a concentration of credit risk, "because substantially all of its Loans and advances receivable balance is comprised of unsecured small dollar, high interest/financing fee advances and loans to US customers with similar credit characteristics."

45.    Propel takes a decidedly different tone in communications with consumers.

46.    To consumers, Propel claims its CreditFresh loans and lines of credit are made "by" CBW Bank and that CreditFresh is simply just the servicer of the loans for its "bank partner," CBW Bank.

47.    However, as aforementioned, CBW Bank has virtually nothing to do with loans and lines of credit Propel makes utilizing the CreditFresh name -- other than to lend its name and status as a state-chartered bank to Propel, a non-bank entity.

48.    Propel discloses to its investors that it purchases loans made by its "bank partners," explaining it "earns revenue on an economic interest purchased in consumer line of credit receivables originated by Bank Partners."

49.    Put more simply, Propel is disclosing it buys the loans supposedly "made by" its bank partners, which includes CBW Bank.

50.    Thus, once the CreditFresh loan was made to Ms. Davis, the loan was immediately sold by CBW Bank and assigned to Propel.

51.    CBW Bank's sole function in the loan process is to make it *appear* that a Kansas bank is the true creditor of CreditFresh accounts, even Propel orchestrates all aspects of the loan and retains the predominant economic interest.

52.    Such deals are frequently referred to as "rent-a-bank" schemes.

53.    Ostensibly, CBW Bank is not subject to state interest rate limits pursuant to the National Bank Act.

54.    Thus, it can export the maximum interest rate in its home state of Kansas to lend to borrowers in other states with stricter usury laws. *See 12 U.S.C. § 85.*

55.    Kansas state law, generally, considers interest rates over 15% to be usurious. However, it exempts certain types of loans from this restriction, included "open ended" lines of credit made by a bank.

56.    Thus, by CBW Bank claiming to be the "true lender" of Mr. Davis' Account, Propel and CBW Bank assert the loans are exempt from Florida's criminal and civil Statutes prohibiting usury.

57.    CBW Bank also "partners" with several other FinTechs to make consumer loans.

58.    CBW offers no credit card products or other unsecured consumer loans directly, and its consumer lending business is overwhelmingly generated by its "partnerships" with entities like Propel.

59.   In essence, Propel launders its CreditFresh loans through CBW by claiming that CBW is the true lending entity, despite the fact the loan is funded with a credit line controlled only by Propel and its subsidiaries; underwritten, approved, and collected by Propel.

60.   The interest in the loan is assigned to Propel almost immediately after origination.

61.   Propel also indemnifies CBW Bank of any potential loss related to the CreditFresh loans.

62.   Thus, all intents and purposes, no capital belonging to CBW Bank is actually at risk in the making of CreditFresh loans.

63.   Propel is the true lender of Mr. Davis' Account, as it has the predominant economic interest in loans made to consumers like Mr. Davis. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall*, *Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

64.     Beyond this, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

65.     "In determining whether an agreement is usurious, the court may disregard the form of the agreement and consider the substance of the transaction." *Antonelli v. Neumann*, 537 So. 2d 1027, 1029 (Fla. Dist. Ct. App. 1988) *See also, Growth Leasing, Ltd. v. Gulfview Advertiser, Inc.*,448 So.2d 1224 (Fla. 2d DCA 1984); *May v. U.S. Leasing Corp.*,239 So.2d 73 (Fla. 4th DCA 1970); *Kay v. Amendola*,129 So.2d 170 (Fla. 2d DCA 1961).

66.     CBW Bank stands to lose virtually nothing if a loan or extension of credit goes bad.

67.     Likewise, CBW Bank stands to profit very little in the event an extension of credit is paid in full at illegal annual interest rates, like the CreditFresh Account granted to Mr. Davis.

68.     Rather, CBW Bank collects a small, but guaranteed, fee for each loan or extension of credit originated as part of the rent-a-bank scheme with Propel.

69.     Thus, CBW Bank was not the true lender of Mr. Davis' CreditFresh Account.

70.     Propel maintains a cash collateral account with CBW Bank, an alternative collateral account, and letters of credit which benefit CBW Bank.

71.   This provides three extra layers of protection for CBW Bank, at the expense of Propel, to ensure CBW Bank loses no money even if a loan the bank "made" does not perform.

72.   Consumers who are looking to obtain financing from CreditFresh must apply at www.CreditFresh.com, not through CBW Bank's own website.

73.   Even assuming, *arguendo*, that CBW Bank was – somehow -- the "true creditor" of Mr. Davis' account, CBW Bank would nonetheless be limited to charging interest rates which were legal under Kansas law.

74.   While Kansas has no *per se* interest rate cap on open-ended loans from banks, it has substantial legislation prohibiting unfair and unconscionable business practices. *See, e.g.*, Kansas Statutes 50-627.

75.   Usury "weakens the social and economic foundations of a country." Pope Francis, *Address to National Anti-Usury Council* (Feb. 3, 2018).

76.   In this spirit, many courts have found that excessive rates of interest – even in the absence of any strict numerical limit – are nonetheless unconscionable business practices. *See, e.g., State of New Mexico vs. B&B Investment Group d/b/a Cash Loans Now,* Docket 34,266, Supreme Court of New Mexico, June 26, 2014 (online payday lender's business practices were unconscionable and illegal under New Mexican law due to excessively-high interest rates, despite New Mexico having no strict limit concerning maximum interest rates).

77.   Kansas Statutes 50-627(b)(2) holds that one factor determining if a business transaction is unconscionable concerns if "the price grossly exceeded the price

at which similar property or services were readily obtainable in similar transactions by similar consumers."

78. The average interest rate for a loan similar to the one made by Propel (or, supposedly, CBW Bank), made by a legitimate lender to Mr. Davis, would have been roughly **19% interest**.

79. Propel/CBW Bank charged rates more than **six times** this amount.

80. Kansas Statutes 50-627(b)(5) holds another factor determining if a business transaction is unconscionable concerns if "the transaction the supplier induced the consumer to enter into was excessively one-sided in favor of the supplier."

81. The CreditFresh loan made by Propel/CBW Bank was subject to interest rates so excessive that the vast majority of states – including Florida – could prosecute such actions as felonies under state law.

82. Kansas Statutes 50-627(b)(6) holds another factor determining if a business transaction is unconscionable concerns if "the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

83. Propel and CBW Bank are aware that almost all consumers will believe that a state-charted bank, insured by the FDIC, and subject to substantial regulatory scrutiny, will charge interest and fees only as allowed by law.

84. The mir of the FDIC's insurance of CBW Bank makes loan products like CreditFresh seem more legitimate to a consumer than they otherwise would if the identical loan was marketed by Propel, a foreign, non-bank entity.

## Centrinex's Role in the Enterprise

85.     Centrinex is a call center established in 2011 which caters to the online lending industry.

86.     The vast majority of Centrinex's clients operate "rent-a-bank" schemes or "rent-a-tribe" schemes.[2]

87.     Among past Centrinex clients is Dark Star Lending, which also went by DS Lending, LTD, and made loans at over 700% annual interest.

88.     Dark Star claimed to operate from the British Virgin Islands – but its address there was actually a rented post office box. In reality, it operated from Miami, Florida and was thus subject to Florida interest rate restrictions.

89.     Centrinex was aware that Dark Star was based in Miami but performed over $150,000 worth of work facilitating loans to consumers at interest rates higher than what organized crime syndicates like the Mafia typically charge.

90.     Propel contracts with Centrinex to answer incoming calls as well as make outbound collection calls on past-due CreditFresh accounts.

91.     Centrinex "has experience in the payday loan industry and supports those operations by providing call center services to others in that same industry." *Centrinex, LLC vs. Darkstar Group, LTD et. al*, case 12-2300-SAC, U.S.D.C., Kan., Sept. 19, 2012.

---

[2] "Rent-a-tribe" schemes involve FinTechs and small Native American tribes, who, instead of banks, claim to be making the loans under their own "tribal lending" laws and, purportedly, have sovereign immunity from civil or criminal prosecution.

92.     A "help wanted" ad posted by Centrinex in October 2021 stated it was seeking to hire customer service representatives to handle calls for its client, CreditFresh, noting "responsibilities include engaging customer contact and verifying applications based on criteria *established by CreditFresh*." (Emphasis added.)

93.     Employees or agents of Centrinex spoke with Mr. Davis several times by phone, attempting to collect amounts claimed owed on the CreditFresh loan.

94.     At no point did these representatives indicate that the CreditFresh account was unenforceable against Mr. Davis.

95.     Centrinex was fully aware of the triple-digit interest rates the CreditFresh Account was subject to, and was fully aware of the "rent-a-bank" scheme between Propel and CBW Bank.

96.     Non-natural person like Centrienx, even if outside of a racketeering enterprise, can be civilly liable under federal anti-racketeering laws if they "agreed to facilitate a scheme by providing tools, equipment, cover or space," or provided the "facilitation was knowing because the defendant was aware of the broader scheme, even if he was unaware of the particulars." *United States v. Zemlyansky*, 908 F.3d 1 (2d Cir. 2018)

97.     Mr. Davis has been damaged in that he has paid Propel and CBW Bank for an extension of credit which is void and usurious pursuant to Florida law.

98.     Mr. Davis also suffered severe emotional distress as a result of the Defendants' attempts to collect an unenforceable account.

99.     Mr. Davis has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF 18 U.S.C § 1962(a)
## All Defendants

100.     Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

101.     The Defendants, through their joint operation and control of CreditFresh, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

102.     The Defendants violated **18 U.S.C § 1962(a)** when each they received proceeds directly and indirectly from the collection of an unlawful debt – Mr. Davis' line of credit – and each utilized a portion of the income derived from the collection to further establish and assist the operations of the enterprise.

103.     The Defendants utilized the internet, telephone and mail to reach across state lines in the operation of CreditFresh, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from Mr. Davis' Florida bank account.

104.     Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT II
## VIOLATIONS OF 18 U.S.C § 1962(b)
## All Defendants

105.     Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

106.    The Defendants, through their joint operation and control of CreditFresh, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

107.    The Defendants violated **18 U.S.C § 1962(b)** when they each received proceeds directly and indirectly from the collection of an unlawful debt – Mr. Davis' CreditFresh Account – and each utilized a portion of the income derived from the collection to further establish and assist the operations of the enterprise.

108.    The Defendants utilized the internet, telephone and mail to reach across state lines in the operation of CreditFresh, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from Mr. Davis' Florida bank account.

109.    Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT III**
**VIOLATIONS OF 18 U.S.C § 1962(c)**
**All Defendants**

110.    Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

111.    The Defendants, through their joint operation and control of CreditFresh, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

112.    The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

113.   The Defendants' participation in the enterprise violated **15 U.S.C. § 1962(c)** and caused Plaintiff to repay amounts on his unlawful extension of credit.

114.   The Defendants utilized the internet, telephone and mail to reach across state lines in the operation of CreditFresh, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from Mr. Davis' Florida bank account.

115.   Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT IV**
**VIOLATIONS OF 18 U.S.C § 1962(d)**
**All Defendants**

116.   Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

117.   The Defendants violated **18 U.S.C § 1962(d) by** conspiring with each other, and other persons, to issue and collect unlawful debts through CreditFresh.

118.   The Defendants each took actions in furtherance of this conspiracy.  For example, at various times, the Defendants have: (a) issued credit to Mr. Davis; (b) initiated ACH deposits and withdrawals to Mr. Davis' bank accounts (c) attempted collection of the credit line through a call to Mr. Davis; and/or (d) claimed ownership of CreditFresh accounts to provide a guise of issuance from a bank.

119.   The Defendants utilized the internet, telephone and mail to reach across state lines in furtherance of their conspiracy.

120.     Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT V**
**VIOLATIONS OF THE FCCPA - FLA. STAT. § 559.72(9)**
**All Defendants**

121.     Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

122.     The Defendants violated **Florida Statutes § 559.72(9)**, by attempting to enforce Mr. Davis' line of credit, and by asserting the legal right to do so, when they collected, and attempted collection of the line of credit via ACH withdrawals, emails, and calls to Mr. Davis.

123.     The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiff and profiting from it.

124.     The Defendants each knew of the illegal nature of the loans, as the Defendants have gone to great lengths to attempt to avoid Florida law through use of a "rent-a-bank" scheme.

125.     Accordingly, the Defendants are jointly and severally liable to Plaintiff for his actual damages, statutory damages of up to $1000.00, punitive damages, costs, and attorney's fees pursuant to Fla. Stat. § 559.77.

**COUNT VI**
**VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(1)**
**All Defendants**

126.     Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

127.    The Defendants, through their joint operation and control of CreditFresh, constitute an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

128.    The Defendants violated **Florida Statutes § 772.103(1)** when each they received proceeds directly and indirectly from the collection of an unlawful debt – Mr. Davis' CreditFresh Account – and each utilized a portion of the income derived from the collection to further establish and assist the operations of the enterprise.

129.    Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to Florida Statutes 772.104(1).

**COUNT VII**
**VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(2)**
**All Defendants**

130.    Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

131.    The Defendants, through their joint operation and control of CreditFresh, constitute an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

132.    The Defendants violated **Florida Statutes § 772.103(2)** when each they received proceeds directly and indirectly from the collection of an unlawful debt – Mr. Davis' CreditFresh Account – and each utilized a portion of the income derived from the collection to further establish and assist the operations of the enterprise.

133.    Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to Florida Statutes 772.104(1).

**COUNT VIII**
**VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(3)**
**All Defendants**

134.    Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

135.    The Defendants, through their joint operation and control of CreditFresh, constitute an "enterprise" under CRCPA, Fla. Stat. § 772.102(3).

136.    The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

137.    The Defendants' participation in the enterprise violated **Fla. Stat. § 772.103(3)** and caused Plaintiff to repay amounts on the unlawful extension of credit received by CreditFresh.

138.    Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to Florida Statutes 772.104(1).

**COUNT IX**
**<u>VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(4)</u>**
**<u>All Defendants</u>**

139.    Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

140.    The Defendants violated **Fla. Stat. § 772.103(4)** by conspiring with each other, and other persons, to issue and collect unlawful debts through CreditFresh.

141.    The Defendants each took actions in furtherance of this conspiracy.  For example, at various times, the Defendants have: (a) issued credit to Mr. Davis; (b) initiated ACH deposits and withdrawals to Mr. Davis' bank accounts (c) attempted collection of the credit line through a call to Mr. Davis; and/or (d) claimed ownership of CreditFresh accounts to provide a guise of issuance from a bank.

142.    Accordingly, the Defendants are jointly and severally liable to Mr. Davis for treble damages, costs, and attorney's fees pursuant to Florida Statutes 772.104(1).

**COUNT X**
**UNJUST ENRICHMENT**

143.    Mr. Davis incorporates Paragraphs 1 – 99 as if fully restated herein.

144.    The extension of credit issued by CreditFresh to Plaintiff charged an interest rate which rendered it void and unenforceable in Florida.

145.    Plaintiff conferred a benefit on Defendants when he made payments on the extension of credit, as he had no obligation to do so and, therefore, Defendants were owed nothing.

146.    Defendants knew, or should have known, of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful credit line such that it would be inequitable for Defendants to retain the money they received.

147.    Accordingly, Plaintiff seeks to recover from Defendants, jointly and severally, all amounts repaid on his CreditFresh Account.

**DEMAND FOR JURY TRIAL**

Mr. Davis hereby demands a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that the Court enter judgment on behalf of himself and against the Defendants for:

A.     An award of actual, punitive, and statutory damages as authorized under the FCCPA;

B.     Treble actual damages as authorized for recovery under RICO and CRCPA;

C.     An award of attorneys' fees, litigation expenses, and costs of suit as authorized under the FCCPA, RICO, and CRCPA;

D.     Such other relief as the Court deems just and proper.

Respectfully submitted this March 7, 2022, by:

**SERAPH LEGAL, P. A.**

*/s/ Thomas M. Bonan*
Thomas M. Bonan Esq.
Florida Bar No.: 118103
1614 North 19th Street
Tampa, Florida 33605
Tel: 813-567-1230 (Ext: 302)
Fax: 855-500-0705
TBonan@SeraphLegal.com
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**
A     Propel's Customer Disclosures (from www.CreditFresh.com)
B     Interest Rates as Disclosed to Investors in Stock Prospectus